UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JOSEPH R. PASSINO,

                                  Plaintiff,

        v.                                                          1:25-cv-00727 (AMN/DJS)

FULTON COUNTY NEW YORK, *et al.*,

                                  Defendants.

_____

APPEARANCES:                                          OF COUNSEL:

**UBA LAW FIRM, P.C.**                                **VINCENT U. UBA, ESQ.**
744 Broadway
Albany, New York 12207
*Attorneys for Plaintiff*

**MURPHY BURNS GROUDINE LLP**              **STEPHEN M. GROUDINE, ESQ.**
407 Albany Shaker Road
Loudonville, New York 12211
*Attorneys for Defendants Fulton County,*
*Richard C. Giardino, Jeffrey Fake,*
*Jordan M. Shannon, and Robert Stemmler*

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

I.        INTRODUCTION

        On April 22, 2025, Plaintiff Joseph R. Passino commenced this suit in New York Supreme

Court pursuant to 42 U.S.C. § 1983 ("Section 1983") and New York state law alleging injuries

arising out of two criminal prosecutions and raising various related claims against Richard C.

Giardino, Jeffrey Fake, Jordan M. Shannon, and Robert Stemmler in their official and individual

capacities, and against Fulton County (collectively, "County Defendants"). *See* Dkt. No. 2

("Complaint"). Plaintiff also brings claims against Jodie-Lynn Vannie and Gladys K. Griffith, who

1

have not appeared in the action, and an unidentified Jane Doe (collectively with County Defendants, "Defendants"). *See id.* County Defendants removed the state action to this Court on June 9, 2025. Dkt. No. 1.

Presently before the Court is County Defendants' motion to dismiss for failure to state a claim on which relief can be granted. Dkt. No. 10 (the "Motion"); *see* Fed. R. Civ. Pro. 12(b)(6). Plaintiff opposed the Motion, *see* Dkt. No. 19, and County Defendants replied in further support. Dkt. No. 20.

For the reasons set forth below, the Motion is granted in part and denied in part.

## II.    BACKGROUND

Unless otherwise noted, the following facts are drawn from the Complaint, its attachments, or materials it incorporates by reference, and are assumed to be true for purposes of ruling on the motion, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*), or are otherwise matters of public record. *Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020).

### A.  The Parties

Plaintiff Joesph R. Passino is an individual residing in Fulton County, New York. Dkt. No. 2 at ¶ 1. At all relevant times, Plaintiff was the Dog Control Officer for the Town of Perth, New York. *Id.* at ¶ 2. Plaintiff also served as a volunteer backup Animal Control Officer for the Fulton County Sheriff's Department, the New York State Police, the Town of Amsterdam, the Town of Bleecker, and the Village of Mayfield. *Id.* at ¶ 3.

Fulton County is a municipal corporation organized under New York law, with its principal administrative office in Johnstown, New York. *Id.* at ¶¶ 4, 7. At all relevant times, Defendant Richard C. Giardino was the Fulton County Sheriff, *see id.* at ¶ 14, Defendants Jeffrey Fake and

Jordan M. Shannon were deputy sheriffs with the Fulton County Sheriff's Department ("FCSD"), *see id.* at ¶¶ 8, 10, and Defendant Robert Stemmler was a sergeant with FCSD who also supervised Defendant Shannon. *Id.* at ¶ 12.

At all relevant times, Defendants Jodi-Lynn Vannie and Gladys K. Griffith were individuals residing in Amsterdam, New York. *See* Dkt. No. 2-12 at 1; Dkt. No. 2-3 at 6.[1]

### B. Plaintiff's Allegations

Plaintiff's claims arise out of two incidents, each leading to an arrest and a criminal proceeding. *See* Dkt. No. 2 at ¶¶ 42-220. For context, Plaintiff also alleges a particular history of interactions between himself and FCSD, *see id.* at ¶¶ 22-41, including two instances in which FCSD called him to shoot a sick or injured animal within five hundred feet of a "dwelling house, farm building or farm structure, school building, school playground, or occupied factory or church," one instance in which FCSD members shot a horse within five hundred feet of the same, and one instance in which Plaintiff refused a directive by Defendant Giardino to break into a home without a warrant to seize an unlicensed dog that had been deprived of food and water for a week. *Id.* at ¶¶ 22-39. As to this last instance, Plaintiff alleges that "because [he] would not go along with FCSD's lawful or unlawful instructions[,]" FCSD employees and agents no longer wanted him as the Dog Control Officer. *Id.* at ¶ 40.

### 1. April 7, 2021 Arrest

As to the first incident, Plaintiff alleges that on January 4, 2021, he received multiple calls regarding two at-large dogs, one of which was acting aggressively. *Id.* at ¶ 42. After Defendant Griffith informed Plaintiff that she had seen the dogs walking toward Perth Bible Church, Plaintiff

---

[1] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

drove to that location and saw the two dogs in the driveway of the pastor's house, which is also on the property. *Id.* at ¶¶ 43-44. Perth Bible Church also operates a school, which was in session. *See* Dkt. No. 2-3 at 2. Then, Plaintiff alleges that while he was waiting for backup, he observed one of the dogs barking and growling at someone in the house, at which point he attempted to engage the dogs himself next to the garage while armed with a loaded pistol. Dkt. No. 2 at ¶¶ 45-47. Plaintiff alleges that one of the dogs had already charged his truck aggressively when he pulled in, and that the same dog "lunged violently" at him when he was out of the truck. *Id.* at ¶¶ 45, 48. Plaintiff alleges that after he missed an attempt to hit that dog with the butt of his pistol, the dog again lunged violently at Plaintiff, who then "took the safety lock off his pistol and shot the male dog with the bullet grazing the male dog's tooth." *Id.* at ¶ 48. At that point, the dog retreated. *Id.* Plaintiff then reported the incident to FCSD, canvassed the neighborhood, and identified the dogs' owner, who later found and collected the dogs. *Id.* at ¶¶ 49-50.

After an investigation into the incident that took place on January 4, 2021, Defendant Fake arrested Plaintiff on April 7, 2021 and charged him with reckless endangerment in the second degree and illegal discharge of a firearm within five hundred feet of a dwelling house and school building, both misdemeanors. *Id.* at ¶¶ 51-53 (citing N.Y. Pen. Law § 120.20 and N.Y. Envir. Cons. Law § 11-9031.4(a)(2)). Defendant Fake's accusatory instrument indicates that he based the charges on Plaintiff's verbal statements and the depositions of Nicole Langlois, the owner of the dogs, Mark Appell, the pastor of Perth Bible Church, and Defendant Griffith. Dkt. No. 2-3. As a result of the charges and a securing order levying various conditions on Plaintiff, *see* Dkt. No. 2-4, Plaintiff alleges that he appeared in Northampton Town Court at least three times. Dkt. No. 2 at ¶ 72. On November 27, 2022, the town prosecutor issued Plaintiff an Adjournment in

Contemplation of Dismissal for both charges, which were then dismissed on December 26, 2022. Dkt. No. 2-6; *see also* Dkt. No. 2 at ¶ 77.

### 2. August 10, 2022 Arrest

As to the second incident, Plaintiff alleges that on July 27, 2022, while Defendant Vannie was on her back porch with her two dogs, Plaintiff pulled up to her porch, informed her that he was the Dog Control Officer, and asked whether her dogs were licensed. Dkt. No. 2 at ¶¶ 93-94. After Defendant Vannie stated that they were not licensed, Plaintiff then alleges that he told Defendant Vannie that the law required her to license her dogs and provided her a handwritten note with his name, phone number, title, and the Town Hall hours of operation. *Id.* at ¶¶ 94-95.

During their interaction, Plaintiff alleges that Defendant Vannie asked for identification and Plaintiff responded by showing her his Town of Perth Dog Control Officer badge. *Id.* at ¶ 96. Plaintiff also alleges that he asked if Defendant Vannie wanted to see his identification card issued by FCSD, but she said no. *Id.* at ¶ 97. According to Plaintiff, FCSD issued him an identification card on January 20, 2000, identifying him as the "Perth Dog Control Officer," and some time after that, Plaintiff was issued a badge with the designation: "Town of Perth, Fulton County, New York, Dog Control Officer." *Id.* at ¶¶ 88-89; *see also* Dkt. Nos. 2-7, 2-8.

After that interaction, Defendant Vannie called FCSD and spoke with Defendant Jane Doe. Dkt. No. 2 at ¶ 102; *see* Dkt. No. 2-10 (call transcript). During the call, Defendant Vannie sought to confirm Plaintiff's identity, and also stated that Plaintiff had implied that Defendant Vannie might be ticketed if she didn't register her dogs and told her that he was "with the Sheriff's Department." *See* Dkt. No. 2-10. Jane Doe then expressed concern that Plaintiff purportedly identified himself as a member of FCSD and advised Defendant Vannie that their phone

conversation would be forwarded to the administrative sergeant. *Id.* at 7:21-23, 9:14-18, 10:17-22.[2]

On July 28, 2022, Defendant Vannie gave an in-person sworn deposition to Defendant Shannon. Dkt. No. 2 at ¶ 108; *see* Dkt. No. 2-11 (deposition transcript). During their conversation, Defendant Vannie recounts her version of the interaction with Plaintiff, specifically asserting that Plaintiff stated that he was "with the Sherriff's," that Plaintiff showed her his badge that "looked like any normal badge that a police officer would have," and that she believed that Plaintiff was functioning as a law enforcement official. Dkt. No. 2-11 at 18:11-24, 26:18-23.

On August 10, 2022, Defendant Shannon arrested Plaintiff outside of Plaintiff's home without a warrant and charged him with criminal impersonation of a law enforcement officer, a class E felony. Dkt. Nos. 2 at ¶ 125 (citing N.Y. Pen. Law § 190.26(1)); *see also* Dkt. No. 2-14. According to the accusatory instrument, Defendant Shannon based his arrest on Defendant Vannie's sworn deposition testimony. *See* Dkt. No. 2-14.

During the arrest, Plaintiff alleges that Defendant Shannon took Plaintiff's badge and never returned it. Dkt. No. 2 at ¶¶ 174-175. Plaintiff also alleges that Defendant Shannon initially agreed to not handcuff Plaintiff during transport for processing, but as they were walking to the police vehicle, Defendant Shannon grabbed Plaintiff by his left shoulder, shook him, and screamed, "stop resisting, stop resisting!" *Id.* at ¶ 182. Plaintiff then alleges that he told Defendant Shannon that he was hurting Plaintiff, but Defendant Shannon "continued to scream and shake [Plaintiff]." *Id.* At some point after, Defendant Shannon handcuffed Plaintiff. *Id.* at ¶ 195. Plaintiff alleges that Defendant Shannon knew that Plaintiff's left shoulder was injured, as evidenced by Defendant

---

[2] Plaintiff contends that based on Defendant Shannon's case report, the administrative sergeant was Defendant Stemmler. Dkt. No. 19 at 27 n.5; *see also* Dkt. No. 2-13 at 2.

Shannon noting in his case report: Plaintiff "had informed me [that] he has a shoulder injury and could not be handcuffed from the back so I handcuffed [Plaintiff] from the front of his body." *Id.* at ¶ 183; *see* Dkt. No. 2-13 at 4.

Before and after processing, Plaintiff alleges that Defendant Shannon stated multiple times that Plaintiff would be lucky if Defendant Shannon did not also charge him with resisting arrest. Dkt. No. 2 at ¶¶ 184-185. Plaintiff then alleges that after Defendant Shannon brought him back home after processing, Plaintiff pointed to the security cameras around his house, and said: "[Y]ou have been caught doing dirty and a Black Sheriff Deputy can go to jail just as quick as a White man, so you have 10 seconds to arrest me for another bull charge or leave and always remember this!!" *Id.* at ¶ 185. Plaintiff alleges that Defendant Shannon's actions during the arrest exacerbated his shoulder injury and caused "severe physical, mental, and emotional pain . . . to such an extent that more than two years after the incident, [Plaintiff] is still receiving medical treatment." *Id.* at ¶ 188.

On September 1, 2022, Plaintiff resigned as the Town of Perth Dog Control Officer. Dkt. No. 2 at ¶ 137.

Plaintiff attended Northampton Town Court four times due to his criminal impersonation charge and a securing order imposing conditions on Plaintiff. *Id.* at ¶¶ 134-135; *see also* Dkt. No. 2-15. On June 6, 2024, the town prosecutor issued Plaintiff an Adjournment in Contemplation of Dismissal, and the criminal impersonation charge was dismissed on June 7, 2024. Dkt. No. 2-16 at 2; *see also* Dkt. No. 2 at ¶ 136.

### C. Plaintiff's Claims

As to the charges filed on April 7, 2021, Plaintiff brings malicious prosecution claims pursuant to Section 1983 against Defendants Fake, Giardino, Fulton County, and Griffith. *See*

Dkt. No. 2 at ¶¶ 78-87. As to the arrest and charges filed on August 10, 2022, Plaintiff brings claims for malicious prosecution, unlawful search and seizure, excessive force, false arrest, and malicious abuse of legal process pursuant to Section 1983, as well as conspiracy claims pursuant to Section 1983 and 42 U.S.C. § 1985(3) ("Section 1985(3)"), against Defendants Shannon, Stemmler, Fake, Giardino, Fulton County, Vannie, and Jane Doe. *See id.* at ¶¶ 146-161, 169-220. Finally, Plaintiff brings a malicious prosecution claim under New York law against Defendant Vannie. *Id.* at ¶¶ 162-168.

### III.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). This presumption, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleadings, the court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers*, 282 F.3d at 152-53).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555, and present claims that are "plausible on [their]

face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

IV.    **DISCUSSION**[3]

   A.  **Fourth or Fourteenth Amendment**

As an initial matter, "[w]hen a plaintiff brings both Fourth and Fourteenth Amendment claims that arise out of the same conduct by defendants, the two claims may not proceed simultaneously." *Fraser v. City of New York*, No. 20-cv-5741, 2022 WL 3045524, at *2 (E.D.N.Y. Aug. 1, 2022) (citations omitted). "In these circumstances, courts must identify the specific constitutional right allegedly infringed . . . and judge the claim by reference to the specific constitutional standard which governs that right." *Id.* (internal quotation marks and citation omitted).

---

[3] When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (citation omitted). Here, Plaintiff attaches numerous state court documents to the Complaint that he relies upon in support of his allegations. *See* Dkt. Nos. 2-1-2-17. Neither party challenges the relevance, authenticity, or accuracy of these documents. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (noting that if "there is a dispute as to the relevance, authenticity, or accuracy of the documents relied upon, the district court may not dismiss the complaint with those materials in mind"). Accordingly, the Court finds that it may consider these documents for purposes of deciding the County Defendants' Motion.

To the extent that Plaintiff's Section 1983 claims of malicious prosecution, false arrest, unlawful search and seizure, and excessive force are based on the Fourteenth Amendment, those claims must be dismissed. "[I]t is the Fourth Amendment, and not [the Fourteenth Amendment right to] substantive due process, under which a [Section] 1983 malicious prosecution claim must be analyzed." *Wagner v. Hyra*, 518 F. Supp. 3d 613, 635 (N.D.N.Y. 2021) (internal quotation marks and citation omitted). Regarding Plaintiff's false arrest claim, "because claims for unlawful arrest are governed by the Fourth Amendment, Plaintiff may not seek relief for . . . alleged unlawful arrest[s] under the rubric of a denial of his substantive due process rights." *Barkai v. Nuendorf*, No. 21-cv-4060, 2023 WL 2691712, at *32 (S.D.N.Y. Mar. 29, 2023) (quoting *Harford v. Cnty. of Broome*, 102 F. Supp. 2d 85, 95 (N.D.N.Y. 2000)). Similarly, "because the Fourth Amendment provides an explicit textual source of constitutional behavior against searches by law enforcement officials, Plaintiff's unlawful search claim cannot be analyzed under the Fourteenth Amendment." *Rosado v. Vill. of Goshen*, No. 16-cv-6916, 2019 WL 1437522, at *4 (S.D.N.Y. Mar. 31, 2019) (internal quotation marks and citations omitted). Furthermore, courts evaluate excessive force claims arising out of an arrest or seizure under the Fourth Amendment using an objective reasonableness standard. *See Figuereo v. City of Saratoga Springs*, No. 23-cv-922 (AMN/PJE), 2025 WL 460784, at *7 (N.D.N.Y. Feb. 11, 2025).

Additionally, to the extent that Plaintiff's Section 1983 claim of malicious abuse of process is based on the Fourth Amendment, that claim must also be dismissed. "[I]n the criminal context, malicious abuse of process is by definition a denial of procedural due process." *Zappin v. Cooper*, No. 23-165, 2024 WL 3084015, at *2 (2d Cir. June 21, 2024) (citation omitted). Thus, Plaintiff's claims for malicious abuse of process must be evaluated under the Fourteenth Amendment.

**B. Malicious Prosecution**

"The elements of a [Section] 1983 malicious prosecution claim require that the plaintiff prove that (1) the defendant initiated a prosecution against the plaintiff, (2) the defendant lacked probable cause to believe the proceeding could succeed, (3) the defendant acted with malice, (4) the prosecution was terminated in plaintiff's favor, and (5) there was a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Wagner*, 518 F. Supp. 3d at 633 (quoting *Bernshtein v. City of New York*, 496 F. App'x 140, 142 (2d Cir. 2012) (summary order)); *see also Rohman v. N.Y.C. Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000).

Here, Plaintiff's malicious prosecution claim fails because the underlying state court actions were not terminated in Plaintiff's favor. Attached to the Complaint are the certificate of dispositions for the underlying state court actions, which indicate that the criminal charges brought against Plaintiff were adjourned in contemplation of dismissal pursuant New York Criminal Procedure Law § 170.55. *See* Dkt. Nos. 2-6, 2-16. "It has long been established that the acceptance of an adjournment in contemplation of dismissal does not constitute a favorable determination for purposes of a malicious prosecution claim." *Brill v. Ulster Cnty.*, 799 F. Supp. 3d 73, 85 (N.D.N.Y. 2025) (citations omitted); *see also Fulton v. Robinson*, 289 F.3d 188, 196 (2d Cir. 2002) (explaining that adjournment in contemplation of dismissal "is not a favorable termination because it leaves open the question of the accused's guilt and allows the state to pursue the criminal prosecution in the interests of justice during the conditional period") (citation omitted).

Accordingly, the Court dismisses Plaintiff's malicious prosecution claim under the Fourth Amendment.

### C. False Arrest

"A [Section] 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, is substantially the same as a claim for false arrest under New York law." *Alexander v. City of Syracuse*, 132 F.4th 129, 156 (2d Cir. 2025) (quoting *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021)). "Under New York law, to prevail on a claim for false arrest, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Id.* (quoting *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021)). "Under both federal and New York state law, probable cause is a complete defense to a false arrest claim." *Carruthers v. Colton*, 153 F.4th 169, 179 (2d Cir. Aug. 20, 2025) (quoting *Triolo v. Nassau Cnty.*, 24 F.4th 98, 106 (2d Cir. 2022)).

Plaintiff alleges that Defendants confined Plaintiff without a warrant, without probable cause, and without his consent. Dkt. No. 2 at ¶¶ 195-198. County Defendants contend that Plaintiff's allegations fail to demonstrate that Defendant Shannon lacked probable cause to arrest Plaintiff and that Plaintiff fails to allege that Defendants Stemmler, Giardino, and Fake were personally involved in Plaintiff's arrest. *See* Dkt. No. 10-1 at 16-17.

The Court agrees with the County Defendants. "Probable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *Adams v. City of Syracuse*, No. 21-cv-650 (AMN/MJK), 2025 WL 2772081, at *16 (N.D.N.Y. Sept. 29, 2025) (quoting *United States v. Hawkins*, 37 F.4th 854, 858 (2d Cir. 2022)).

12

Here, the Court finds that Defendant Shannon had probable cause to arrest Plaintiff on August 10, 2022 for criminal impersonation of a law enforcement officer based on Defendant Vannie's sworn deposition testimony. *See* Dkt. Nos. 2-11, 2-14. When an officer receives his information from a putative victim or eyewitness, probable cause is established "unless the circumstances raise doubt as to the person's veracity." *Fabrikant v. French*, 691 F.3d 193, 216 (2d Cir. 2012) (citation omitted); *see also Smith v. City of Utica*, No. 13-cv-767, 2015 WL 4366230, at *2 (N.D.N.Y. July 16, 2015) (noting that "[i]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness" (citations omitted)). According to the Complaint and its attachments, Defendant Vannie gave a sworn deposition to Defendant Shannon, during which she specifically stated that she believed that Plaintiff was functioning as a law enforcement official because Plaintiff told her that he was "with the Sherriff's" and showed her his badge, which "looked like any normal badge that a police officer would have." *See* Dkt. No. 2 at ¶ 108; *see also* Dkt. No. 2-11 at 18:11-12, 26:18-23. Plaintiff also does not allege that he was a current member of the FCSD. Thus, Defendant Shannon had probable cause to arrest Plaintiff for criminal impersonation of a law enforcement officer.

With respect to Defendants Stemmler, Giardino, and Fake, Plaintiff fails to allege that these Defendants directly participated in Plaintiff's arrest. "A plaintiff cannot sustain a false arrest claim under New York law where there is no allegation that the defendant personally participated in the arrest or detention of the plaintiff." *Kweller v. Cnty. of Broome*, No. 24-cv-1328, 2025 WL 3280745, at *5 (N.D.N.Y. Nov. 25, 2025) (collecting cases) (internal quotation marks and citations omitted). In opposition, Plaintiff asserts in a conclusory fashion that Defendants Stemmler, Giardino, and Fake "participated in the unlawful conduct[]; and/or approved of it, and/or created

the policies, practices, and customs that gave rise to the constitutional deprivations suffered by [Plaintiff]." Dkt. No. 19 at 23. Such general and conclusory assertions are insufficient to demonstrate Defendants' personal involvement. *See, e.g.*, *Daly v. Town of DeWitt*, No. 18-cv-845, 2019 WL 4170162, at \*5 (N.D.N.Y. Sept. 2, 2019) (finding no plausible basis to hold defendant liable for false arrest where the complaint does not allege that defendant was an officer who arrived at the scene after plaintiff was pulled over or that defendant took any action to cause plaintiff's detention or instigate the charges against her).

Accordingly, the Court dismisses Plaintiff's false arrest claim against the County Defendants.

### D. Unlawful Search and Seizure

First, to the extent that Plaintiff's unlawful search and seizure claim is predicated on the seizure of his person based on his August 10, 2022 arrest, the Court dismisses that claim as duplicative of his false arrest claim. *See Parkinson v. Town of Niskayuna*, No. 22-cv-70, 2023 WL 8574309, at \*4 (N.D.N.Y. Dec. 11, 2023) ("To the extent Plaintiff premises his Fourth Amendment claim on the seizure of his person, such a claim is dismissed because it is tantamount to a claim for false arrest[.]"); *see also Lozada v. Weilminster*, 92 F. Supp. 3d 76, 98 (E.D.N.Y. 2015) (finding that plaintiff's unlawful seizure claim is subsumed by her other Fourth Amendment claims because plaintiff "does not allege a search or seizure beyond the actions supporting her false arrest claim").

To the extent that Plaintiff's unlawful search and seizure claim is predicated on the seizure of his property, the Court also dismisses that claim. Plaintiff alleges that Defendant Shannon seized his Town of Perth Dog Control Officer badge without a search warrant and without Plaintiff's consent during his arrest on August 10, 2022. *See* Dkt. No. 2 at ¶ 174. County Defendants argue that because Defendant Shannon had probable cause to arrest Plaintiff on August 10, 2022, and

14

because Plaintiff was subsequently prosecuted for criminal impersonation after Plaintiff showed Defendant Vannie his badge, Plaintiff's badge was seized as evidence of a crime. Dkt. No. 10-1 at 13. In opposition, Plaintiff argues that the seizure of his badge was unreasonable because Defendant Shannon "invaded" Plaintiff's home without a warrant, without exigency, and without Plaintiff's consent and searched and seized Plaintiff's property within the confines of his home. *See* Dkt. No. 19 at 18.

The Court agrees with the County Defendants. As a preliminary matter, the Complaint does not plausibly allege any facts suggesting that Defendant Shannon entered Plaintiff's home to seize Plaintiff's badge, or at any time during Plaintiff's arrest. According to the case report attached to the Complaint, upon Defendant Shannon's arrival at Plaintiff's residence, Plaintiff was sitting in his garage. *See* Dkt. No 2-13 at 4. After conducting his interview of Plaintiff and concluding that Plaintiff "would need to come with [him] to retrieve an [a]ppearance [t]icket for [f]alse impersonation," Defendant Shannon gave Plaintiff the opportunity to drop all items on his person in his garage. *Id.* Plaintiff proceeded to empty all items off his person and put them on his motorcycle in his garage. *Id.* Defendant Shannon subsequently placed Plaintiff under arrest, collected his badge as evidence, and then transported him to the Fulton County Sheriff's Office for processing. *See id.*

Here, as explained in *supra* Section IV(C), there was probable cause to arrest Plaintiff for impersonating an officer. "A police officer may seize personal effects discovered during a search incident to arrest if the officer[] find[s] that these are evidence of criminal conduct, even if unrelated to that for which a suspect had been arrested." *Henton v. City of New York*, No. 24-cv-2270, 2025 WL 1907004, at *4 (E.D.N.Y. July 10, 2025) (citing, *inter alia*, *United States v. Robinson*, 414 U.S. 218, 236 (1973)). Thus, Defendant Shannon lawfully seized Plaintiff's

personal property, including his badge, incident to arrest, without violating Plaintiff's Fourth Amendment rights. *See Henton*, 2025 WL 1907004, at *4-5. Moreover, "the government's failure to return lawfully seized property is not an unreasonable seizure under the Fourth Amendment." *Harding v. Gould*, No. 22-cv-6285, 2024 WL 3742688, at *7 (S.D.N.Y. Aug. 9, 2024) (citing *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004) ("Where, as in this case, an initial seizure of property was reasonable, defendants' failure to return the items does not, by itself, state a separate Fourth Amendment claim of unreasonable seizure.")).

Accordingly, the Court dismisses Plaintiff's unlawful search and seizure claim.

### E. Excessive Force

"When assessing whether force is unreasonable under the Fourth Amendment, a court should pay 'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Baptist v. Wheeler*, No. 24-cv-1478 (AMN/TWD), 2025 WL 3120480, at *5 (N.D.N.Y. Nov. 7, 2025) (quoting *Soares v. Connecticut*, 8 F.3d 917, 921 (2d Cir. 1993)). "In doing so, a court takes the perspective of 'a reasonable officer on the scene' rather than that of hindsight." *Id.* (quoting *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015)).

"The police are not required to utilize the least amount of force possible to place someone into custody." *Figuereo*, 2025 WL 460784, at *8 (citation omitted). Moreover, "[c]ourts in this Circuit regularly hold that a plaintiff must have sustained some injury to maintain a claim of excessive force." *Pesola v. City of New York*, No. 15-cv-1917, 2016 WL 1267797, at *7 (S.D.N.Y. Mar. 30, 2016) (collecting cases). However, regardless of the amount of force, "a show of force

16

by an officer that is overly disproportionate to the risk of harm may support a claim for excessive force." *Figuereo*, 2025 WL 460784, at *8 (citation omitted).

### 1. Defendant Shannon

County Defendants contend that Plaintiff's excessive force claim against Defendant Shannon must be dismissed because Plaintiff failed to allege facts plausibly suggesting that Defendant Shannon used beyond *de minimis* force. *See* Dkt. No. 10-1 at 15. Plaintiff argues that the Complaint sufficiently alleges plausible facts in support of his excessive force claim. Dkt. No. 19 at 19-21.

The Court agrees with Plaintiff. Plaintiff alleges that, despite complying with Defendant Shannon's orders, Defendant Shannon, knowing that Plaintiff had an injured left shoulder, "violently grabbed [Plaintiff's] left shoulder and started to shake and squeeze" Plaintiff while "screaming, 'stop resisting, stop resisting!'" Dkt. No. 2 at ¶¶ 182-183. Plaintiff further alleges that he told Defendant Shannon that he was hurting him, but Defendant Shannon "continued to scream and shake [Plaintiff]," which "exacerbated" Plaintiff's existing shoulder injury and caused Plaintiff "significantly severe physical, mental, and emotional pain" for which he is still receiving medical treatment, more than two years after the incident. *Id.* at ¶¶ 182, 188. Accepting these allegations as true, the Complaint plausibly alleges that Defendant Shannon used excessive force in the course of arresting Plaintiff. *See, e.g.*, *Goonewardena v. Spinelli*, No. 15-cv-5239, 2017 WL 9482109, at *13 (E.D.N.Y. Aug. 14, 2017) (recommending that excessive force claim against officer proceed where plaintiff alleged that officer's actions "resulted in plaintiff screaming for help in pain and caused injuries restricting plaintiff's ability to lift heavy objects for two months" (internal quotation marks and citations omitted)), *report and recommendation adopted*, 2017 WL 4280549 (E.D.N.Y. Sept. 26, 2017).

Moreover, even in the context of an arrest, "[b]ecause of its intensely factual nature, the question of whether the use of force was reasonable under the circumstances is generally best left for a jury to decide." *Oakley v. Dolan*, 980 F.3d 279, 284 (2d Cir. 2020) (citation omitted). "These principles apply with even greater force at the motion to dismiss stage, where a court must assume the truth of the plaintiff's allegations and avoid resolving factual disputes." *Id.*; *see also Phillips v. City of Middletown*, No. 17-cv-5307, 2018 WL 4572971, at *3 (S.D.N.Y. Sept. 24, 2018) ("When courts grant motions to dismiss an excessive force claim, it is because the force used was objectively reasonable as a matter of law." (citation omitted)).

Thus, after drawing all reasonable inferences in Plaintiff's favor and taking into account the totality of the circumstances of his arrest, the Court denies County Defendants' motion to dismiss Plaintiff's excessive force claim against Defendant Shannon.[4]

### 2.   Defendants Giardino, Stemmler, and Fake

"It is well-settled that, to establish a defendant's individual liability in a suit brought under Section 1983, a plaintiff must show 'the defendant's personal involvement in the alleged constitutional deprivation.'" *Enders v. Boone*, 658 F. Supp. 3d 70, 90 (N.D.N.Y. 2023) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted)), *aff'd sub*

---

[4] In the alternative, County Defendants contend that Defendant Shannon is entitled to qualified immunity. *See* Dkt. No. 10-1 at 24. "[A]ny adjudication as to the applicability of the qualified immunity defense would be premature at this juncture, since resolution of qualified immunity depends on the determination of certain factual questions that cannot be answered at this stage of the litigation." *Keir v. Donaldson*, No. 25-cv-542, 2025 WL 3442904, at *14 (N.D.N.Y. Dec. 1, 2025) (internal quotation marks, citation, and brackets omitted); *see also O'Brien v. City of Syracuse*, No. 22-cv-948, 2023 WL 6066036, at *14 (N.D.N.Y. Sept. 18, 2023) (noting that "[a] defendant asserting a qualified immunity defense on a motion to dismiss . . . 'faces a formidable hurdle and is usually not successful,'" as such defense "'will succeed only where entitlement to qualified immunity can be established based solely on facts appearing on the face of the complaint'" (quoting *Barnett v. Mount Vernon Police Dept.*, 523 F. App'x 811, 813 (2d Cir. 2013) (alterations omitted)).

*nom. Siano Enders v. Boone*, No. 23-823, 2024 WL 3518058 (2d Cir. July 24, 2024).  A plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).  "Pursuant to this requirement, a Section 1983 plaintiff must allege a tangible connection between the acts of the defendant and the injuries suffered."  *Keyes v. Venettozzi*, No. 18-cv-372, 2022 WL 991402, at *6 (N.D.N.Y. Mar. 31, 2022) (internal quotation marks and citation omitted).  In other words, "the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained."  *Durr v. Slator*, 558 F. Supp. 3d 1, 20 (N.D.N.Y. 2021) (citations omitted).

"Personal involvement of a supervisor may be established by direct participation in a constitutional violation or by showing that he created a policy or custom under which the violation occurred."  *Rindgen v. Cnty. of Broome*, No. 24-cv-1325, 2025 WL 2772080, at *17 (N.D.N.Y. Sept. 29, 2025) (internal quotation marks and citation omitted); *see also Sanchez v. Nassau Cnty.*, 662 F. Supp. 3d 369, 416 (E.D.N.Y. 2023) ("Post-*Tangreti*, district courts in the Circuit have determined that personal involvement still may be established for a supervisory defendant if he or she 'created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom.'") (collecting cases).  However, "conclusory allegations that a defendant was involved in the creation and enforcement of unconstitutional policies cannot sustain a claim of personal involvement."  *Rindgen*, 2025 WL 2772080, at *17 (citation omitted).

Thus, Plaintiff must allege facts suggesting that Defendants planned, directed, or authorized the excessive force against Plaintiff himself, or that they created or maintained policies which led to the use of excessive force against Plaintiff.

19

With respect to Defendant Giardino, Plaintiff alleges that Defendant Giardino "delegated authority to establish the policies, practices, supervision, implementation and conduct of all FCSD employees and agents." Dkt. No. 2 at ¶ 16. These allegations are unsupported by any specific facts, and thus insufficient to plausibly allege Defendant Giardino's personal involvement with respect to the alleged excessive force against Plaintiff. *See, e.g.*, *Baumeister v. Erie Cnty.*, No. 23-cv-1150, 2024 WL 4362311, at *10 (W.D.N.Y. Sept. 30, 2024) (finding that vague and conclusory allegations that sheriff and supervisory officer defendants were *inter alia* "responsible for the supervision, administration, policy practices, procedures, and customs of th[eir] offices," and "the pervasive and entrenched pattern of misconduct . . . relating to utilizing force without justification, including the use of excessive force in effectuating arrests," are insufficient to establish personal involvement).

Plaintiff further alleges that after his arrest on August 10, 2022, while Defendant Shannon was transporting him home, Defendant Giardino pulled up next to Defendant Shannon's vehicle, and the two smiled at each other. Dkt. No. 2 at ¶ 128. This allegation is also insufficient to plausibly allege Defendant Giardino's personal involvement. Defendant Giardino was not present during the alleged incident, and, even accepting Plaintiff's allegations as true, an allegation that Defendants Giardino and Shannon smiled at one another, without more, is insufficient to demonstrate that Defendant Giardino was personally involved in Defendant Shannon's alleged use of excessive force. *See, e.g.*, *Green v. Garcia*, No. 18-cv-1745, 2020 WL 1467359, at *5 (S.D.N.Y. Mar. 25, 2020) (dismissing excessive force claims against certain officers because plaintiff failed to plead that "each of them was individually present during the alleged assault").

Plaintiff also fails to allege that Defendants Stemmler and Fake were personally involved in the alleged use of excessive force. Plaintiff fails to allege that Defendants Stemmler and Fake

participated in the alleged use of excessive force or were responsible for a policy or custom which led to the alleged use of excessive force. Beyond unparticularized allegations against all Defendants, with respect to Plaintiff's excessive force claims, the Complaint alleges, at most, that Defendant Fake supplied a false statement to Defendant Shannon that Plaintiff had a prior history of impersonating law enforcement, *see* Dkt No. 2 at ¶ 119, and Defendant Stemmler instructed Defendant Shannon to take a written statement from Defendant Vannie, *see id.* at ¶ 118, both of which supported Defendant Shannon's arrest and prosecution of Plaintiff. Even granting Plaintiff all favorable inferences, the Court cannot find that Plaintiff plausibly alleges that Defendants Stemmler and Fake were personally involved in any alleged use of excessive force. *See, e.g., Powell v. City of Jamestown*, No. 21-cv-721, 2022 WL 1913581, at *10 (W.D.N.Y. June 3, 2022) (dismissing excessive force claims against chief, sheriff, and undersheriff because plaintiff failed to allege that they personally used any physical force against him, or that they were even present during the alleged incidents).

Accordingly, the Court dismisses Plaintiff's excessive force claim against Defendants Giardino, Stemmler, and Fake.

### F. Malicious Abuse of Process

Plaintiff also asserts a claim for abuse of process. *See* Dkt. No. 2 at ¶¶ 200-205. Courts look to state law for the elements of a Section 1983 claim based on malicious abuse of process. *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 391 (E.D.N.Y. 2013) (citing *Savino v. City of New York*, 331 F.3d 63, 76-77 (2d Cir. 2003)). In New York, in order to prevail on a claim for malicious abuse of process, a plaintiff must show that the defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside legitimate

ends of process." *Wagner*, 518 F. Supp. 3d at 627 (quoting *Savino*, 331 F.3d at 76). "The third element, which forms the crux of this claim, requires that the defendants had an improper *purpose* in instigating the action, as opposed to merely a malicious motive." *Thorpe v. Delta Air Lines, Inc.*, No. 24-cv-1089, 2024 WL 5007423, at *8 (E.D.N.Y. Dec. 6, 2024) (internal quotation marks and citations omitted) (emphasis in original), *aff'd*, No. 25-58, 2025 WL 2868136 (2d Cir. Oct. 9, 2025). "The same elements apply to a [Section] 1983 claim for malicious abuse of process, but the plaintiff must also show the deprivation of a constitutional right." *Rivera v. Jahmi*, 801 F. Supp. 3d 129, 161 (E.D.N.Y. 2025) (internal quotation marks and citation omitted).

Here, regarding the third element, i.e., alleging a collateral objective, Plaintiff fails to state any facts, beyond conclusory allegations, that County Defendants pursued his prosecution for any improper purpose. *See* Dkt. No. 2 at ¶¶ 201-204. In opposition, Plaintiff contends that Defendants "employed the . . . process of [a] felony complaint . . . to force [P]laintiff out of his job as the Dog Control [O]fficer." Dkt. No. 19 at 25. But, in addition to being conclusory, this argument goes to Defendants' motive, and thus, does not satisfy the collateral objective requirement. *See LoPorto v. Cnty. of Rensselaer*, No. 15-cv-866, 2018 WL 4565768, at *14 (N.D.N.Y. Sept. 24, 2018) (noting that a malicious motive alone does not give rise to a cause of action for abuse of process and that plaintiff must instead claim that defendants "aimed to achieve a collateral purpose beyond or in addition to [plaintiff's] criminal prosecution"); *see also Savino*, 331 F.3d at 77-78 (finding that the plaintiff's allegation that an investigation of him "was solely motivated to seek vindication for the City's great political embarrassment and humiliation for allowing plaintiff to be the highest paid city employee" went just to the defendants' motive and thus fell short of creating liability); *Zappin*, 2024 WL 3084015, at *2 (holding that allegations "suggest[ing] only that [defendant] acted maliciously in instigating the prosecution" are insufficient to state a claim of abuse of process).

22

Accordingly, the Court dismisses Plaintiff's abuse of process claim.[5]

### G. Conspiracy Claims

"To prove a [Section] 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Butler v. Hesch*, 286 F. Supp. 3d 337, 363 (N.D.N.Y. 2018) (citations omitted); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). To state a conspiracy claim under Section 1985(3), a plaintiff must allege "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006) and citing 42 U.S.C. § 1985(3)). Under Section 1985(3), the conspiracy must also be "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Id.* (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)).

Here, the Complaint fails to allege a plausible conspiracy claim under either Section 1983 or Section 1985(3). Even read in the light most favorable to Plaintiff, the Complaint contains only conclusory allegations of a conspiracy. Plaintiff alleges that (i) Defendants "conspired and worked in concert to carry out the unlawful actions alleged in th[e] [C]omplaint"; (ii) "[t]he unlawful actions of each of the [D]efendants was a part and parcel of an agreement and conspiracy between

---

[5] Because the Court dismisses Plaintiff's abuse of process claim, the Court does not reach the issue of whether such claim is time-barred, or whether Plaintiff has sufficiently alleged each Defendant's personal involvement.

the [D]efendants to maliciously violate [P]laintiff's constitutional rights"; and (iii) "[e]ach of the [D]efendants was aware, agreed to, approved of, and/or engaged in one or more of the overt acts in furtherance of the conspiracy." Dkt. No. 2 at ¶¶ 207-209, 213, 217-218. "Vague and conclusory allegations that defendants entered into an unlawful agreement will not suffice to state a conspiracy claim under either [Section] 1983 or [Section] 1985(3)." *Brill*, 799 F. Supp. 3d at 82 (quoting *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 97 (N.D.N.Y. 2013) and citing *Emmerling v. Town of Richmond*, 434 F. App'x 10, 12 (2d Cir. 2011)). Plaintiff does not provide any factual basis that supports a meeting of the minds between Defendants indicating that they entered into an express or tacit agreement to achieve some unlawful end. *See, e.g.*, *Brill*, 799 F. Supp. 3d at 83 (finding that plaintiff does not "allege any specific facts regarding a 'meeting of the minds' among any or all [d]efendants, nor does [p]laintiff set forth how [d]efendants acted in concert with one another to violate [p]laintiff's rights").

Moreover, regarding Plaintiff's Section 1985(3) conspiracy claim, the Complaint fails to plausibly allege that Defendants were motivated by racial animus. Plaintiff's allegation that Defendant Shannon, who is black, "was sent, encouraged, and emboldened by the agreement and actions of the other [D]efendants" to deprive Plaintiff, who is white, of his equal protection rights, is conclusory, and thus insufficient to plausibly suggest that Defendants were motivated by Plaintiff's race. *See* Dkt. No. 2 at ¶ 215; *see also Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 284 (S.D.N.Y. 2019) (dismissing Section 1985(3) claim because plaintiff, *inter alia*, has not shown that racial animus accounts for defendants' conduct). Plaintiff also has not alleged membership in a protected class under Section 1985(3). To the extent that Plaintiff claims that Defendants were motivated by class-based discriminatory animus due to Plaintiff's employment as a dog control officer, *see* Dkt. No. 19 at 28, dog control officers are not a protected class because

24

they "plainly do not possess the type of inherited or immutable characteristics sufficient to satisfy the class-based animus requirement." *Dolan*, 794 F.3d at 296; *cf. Berenson v. Biden*, 791 F. Supp. 3d 398, 423-24 (S.D.N.Y. 2025) (noting that courts in this Circuit have found protected classes to include political affiliation, gender, religion, and disability, but not vaccination status, in the context of Section 1985(3)).

Accordingly, the Court grants County Defendants' motion to dismiss Plaintiff's Section 1983 and Section 1985(3) conspiracy claims.

### H.  *Monell* Claim

Lastly, Plaintiff's Section 1983 claims against Fulton County must also be dismissed because Plaintiff has not plausibly pled a *Monell* claim.

Municipalities are not liable under Section 1983 "unless action pursuant to official municipal policy of some nature causes a constitutional tort." *Glassman v. City of New York*, 557 F. App'x 97, 98 (2d Cir. 2014) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "To bring a claim for municipal liability under *Monell*, [a plaintiff] must plausibly allege the existence of an official policy or custom that caused him to be denied a constitutional right." *Thomas v. Town of Lloyd*, 711 F. Supp. 3d 122, 138 (N.D.N.Y. 2024) (citations omitted). "*Monell* liability may be established through: (1) a policy formally adopted and endorsed by the municipality; (2) actions taken by policymaking officials that caused the particular deprivation alleged; (3) practices by subordinate officials that are not expressly authorized but are so widespread and consistent that policymakers must have been aware of them; or (4) a failure by policymakers to train or supervise that amounts to deliberate indifference to the rights of those who come into contact with the inadequately trained or supervised municipal employees." *Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 729 (N.D.N.Y. 2020) (internal quotation marks

omitted) (citing *Deferio v. City of Syracuse*, 770 F. App'x 587, 589-90 (2d Cir. 2019) (summary order)). "Boilerplate statements that county employees were acting in accord with a municipal policy, with no facts to support those statements, are not sufficient to support a *Monell* claim." *Forrest v. Cnty. of Greene*, 676 F. Supp. 3d 69, 76 (N.D.N.Y. 2023) (internal quotation marks and citation omitted).

Here, Plaintiff's allegations are conclusory and fail to sufficiently plead a *Monell* claim against Fulton County. Specifically, Plaintiff alleges that "Fulton County and its decision-making officials instituted and carried out policies, practices, and/or customs of conducting [unlawful] search and seizures[.]" Dkt. No. 2 at ¶ 146. However, Plaintiff fails to allege any specific facts from which any policy, practice, or custom could be inferred that could support a plausible *Monell* claim. *See, e.g.*, *Dougal v. Lewicki*, No. 23-cv-1167, 2023 WL 6430586, at *10 (N.D.N.Y. Oct. 3, 2023) (recommending dismissal of *Monell* claims because plaintiff "does not include any allegations in his complaint concerning municipal conduct that states a *Monell* claim[,] . . . does not allege what actions were taken by the County, or by its employees[,] [or] which [actions] the County knew about"), *report and recommendation adopted*, 2023 WL 7013384 (N.D.N.Y. Oct. 25, 2023).

In opposition, Plaintiff contends that Defendant Giardino, as "the final policymaker" for law enforcement in Fulton County, "established unconstitutional policies, practices and/or customs," as evidenced by Defendant Giardino, on at least one previous occasion, ordering his deputies to break into a home without a warrant to seize an unlicensed dog that was locked in a home without food or water for one week. Dkt. No. 19 at 32; *see also* Dkt. No. 2 at ¶¶ 32-39. Even assuming that such act was unlawful, a single instance of alleged misconduct is insufficient to infer a policy or custom under *Monell*. *See Taranto v. Putnam Cnty.*, No. 21-cv-2455, 2023 WL

6318280, at *16 (S.D.N.Y. Sept. 28, 2023) (noting that "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality" (citations omitted)); *see also Boddie v. City of New York*, No. 15-cv-4275, 2016 WL 1466555, at *3 (S.D.N.Y. Apr. 13, 2016) (holding that pleading only "two or three instances" of a constitutional violation falls "far short of showing a policy, custom, or usage"). Accordingly, Plaintiff's conclusory allegations are insufficient to support a *Monell* claim against Fulton County.

For these reasons, the Court dismisses Plaintiff's claims against Fulton County.

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the County Defendants' motion to dismiss, Dkt. No. 10, is **GRANTED in part and DENIED in part**, and the Court further

**ORDERS** that Plaintiff's excessive force claim shall proceed against Defendant Shannon; and the Court further

**ORDERS** that the remainder of Plaintiff's claims against the County Defendants are **DISMISSED** in accordance with this Memorandum-Decision & Order; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 25, 2026
    Albany, New York

_____
Anne M. Nardacci
U.S. District Judge

27